IMPERIAL MEAT COMPANY, a corporation, Appellant,

v.

UNITED STATES of America, Appellee.

Mathew Herbert LANDERS, Appellant,

v.

UNITED STATES of America, Appellee.

Fred James BETHLEY, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 7119-7121.

United States Court of Appeals Tenth Circuit.

April 22, 1963.

Rehearing Denied May 13, 1963.

John S. Pfeiffer and Louis G. Isaacson, Denver, Colo. (Isaacson, Rosenbaum, Goldberg & Miller, and Charles Rosenbaum, Denver, Colo., on the brief), for appellants.

Arthur L. Fine, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellants were jointly charged in an eighteen count indictment for making false claims to a supply agency of the United States Department of the Army in violation of Title 18 U.S.C. § 287. The defendant corporation was a supplier of boneless beef to the Army, and the claims involved were for payment for meat so supplied. The defendant Landers was an officer of this corporation and defendant Bethley was an employee. Appellants were tried by a jury in a trial that lasted several weeks, were convicted on all counts, and here appeal.

The appellants' first point is that several of the Government's witnesses used written reports "in aid of their testimony" and the court erred in refusing to strike this testimony. These witnesses were in charge of teams of inspectors who examined shipments of meat at var-ious destinations. A certain percentage of the cases would be opened and the individual cuts were examined for grade stamps and for evidence of the removal or absence of grade stamps. The witnesses in each instance directed the work and compiled the report. They testified that they themselves found and saw sub-standard cuts of meat and cuts bearing no grade stamps or an indication that a stamp had been cut off. The witnesses in most instances identified photographs of such cuts.

The reports prepared by the witnesses were to their superior officers and were compilations of notations made by the team members as to the number of boxes opened, number of cuts of meat in each box, and numbers of sub-standard or non-stamped items. These reports were in the witnesses' possession at the time they testified and were not offered in evidence. The appellant urges that the witnesses used these reports for purposes beyond refreshing their recollections. The question whether the reports were being used to refresh the witnesses' recollection or for some other purpose was carefully considered by the trial judge in each instance. For example, as to the witness Marshall, the court said: "We want to know whether the witness is relying upon the report or upon his memory refreshed from the report * * *" The appellant conducted a voir dire in all but two instances on this point and in all instances the cross-examination was lengthy, searching, and tested this point. On direct examination the witnesses made it clear that the reports were used to refresh their recollection. In several instances the witnesses stated they could not remember the dates, the number of cuts in a box, or the number of boxes examined without reference to the report. Their memories were however clear as to sub-standard cuts found and seen by them during the inspection.

The appellants in most instances made no objection to the use by the witnesses of the reports until cross-examination and then moved to strike the testimony. These motions, with the exception of the

witness Tomayko, were directed to all the testimony without attempting to distinguish whether it was from recollection refreshed or whether it referred to dates and numbers. The appellants as to several of the witnesses on cross-examination asked them to examine their reports or to read from their reports as to certain matters. As to the witness Tomayko the motion to strike mentioned that the witness could not distinguish between the matters as to which his recollection was refreshed and as to others. However there was no voir dire by appellants and no objection was made during direct examination. As to this witness the appellants asked the witness specifically to "read them off," referring to items in the witness' report.

■ It was incumbent upon the trial judge to satisfy himself as to whether the witness was using the reports to refresh his recollection or not. The record shows that the trial judge carefully considered this matter, and his determination should be accepted by the appellate court under the circumstances presented here. In United States v. Riccardi, 174 F.2d 883 (3d Cir.), the court stated that the burden was on the trial judge to so satisfy himself and on these matters, in the reception of evidence much depends on the discretion of the trial judge. The distinction between past recollection recorded and present recollection refreshed or revived by a writing or some other device is well considered in the Riccardi case and also in Delaney v. United States, 77 F.2d 916 (3d Cir.), in Jewett v. United States, 15 F.2d 955 (9th Cir.), and need not be here further discussed.

■ The testimony of the witnesses in the record before us as to this point on direct examination and on the extensive cross-examination shows that the standards set out in the authorities have been met. The trial judge with his opportunity to observe the witnesses in their use of the reports during their testimony, and in otherwise evaluating their responses on voir dire concluded that the use was proper, and with this we agree. As to the matters of dates of inspections, numbers of cuts examined, numbers of cases and similar items, even if these are material matters and even if the witnesses did not recall these in detail the appellants cannot here object to the trial court's rulings by reason of their failure to properly object. Thus the trial court's rulings on the use of the reports were correct.

■ The second point urged by appellants is that the trial court erred in admitting records of a corporation which supplied meat to defendant Imperial Meat Company, and also in admitting this defendant's records. These were offered by the Government to prove that the defendant corporation had for the period in question not purchased enough choice grade meat to fulfill the Government contracts and consequently must have used some inferior grade meat. This has been described as the prosecution's "net worth" proof, although this is not an entirely accurate description. Appellant objects mainly that all of the records of meat purchases by the defendant corporation were not offered and that the seller's records did not show grade.

These records of defendant corporation were produced pursuant to a subpoena which required production of all documents. The court refused the several initial offers of these records until a better foundation had been laid; extensive examination and re-examination of the witness were had. The trial court inquired closely as to whether all defendant's invoices were offered. A witness, an F.B.I. accountant, had examined these records at defendant's place of business before the trial and testified that not all the invoices he had previously inspected were now offered and stated which were missing. After further voir dire the invoices were admitted, and the judge remarked that the discrepancy between those previously examined by the witness and those offered " * * * doesn't appear to the court to be of such a magnitude as to effect the admissibility on that ground." He also noted that the subpoena had required defendant to produce all these invoices. There were oth-

er records of defendant's receipt of meat shipments introduced in addition to the above invoices. There was no error in admitting defendant corporation's invoices.

There was evidence introduced to show the weight of boneless beef that could be expected from a carcass of beef of certain weight; thus there was a basis to compute the yield from the carcasses purchased by defendant to see if enough choice meat was purchased during the period to fulfill the contracts.

The invoices of the supplier, Capital Meat Company, were also introduced and objected to on the ground that they did not show grades of meat. The official of this supplier was examined on voir dire out of the presence of the jury as to the meanings of notations made on these exhibits. This witness so testified that the notation "good" did not mean beef so graded, nor did "std" mean standard, nor did "cutter" mean a grade, and "util" did not mean "utility" grade. He testified these were price codes instead. The court nevertheless admitted the exhibits, and properly so. However, the witness' explanation of the "price code" was not thereafter developed in the presence of the jury because appellant did not cross-examine. The trial court called this situation to appellant's attention and an opportunity was given to call the witness for cross-examination, but it was not accepted. We find no error in the introduction of this supplier's invoices.

■ The supplier's invoices admitted constituted business records under 28 U.S.C. § 1732. They were records of an act, transaction, occurrence, or event and were admissible as evidence of sales of meat. The appellant urges that they were not a record of choice meat delivered, as the notations referred to prices instead. The invoices were records of sales of meat and were made and kept for that purpose and were admissible to show sales. What details were shown on the invoices would be subject to explanation as contemplated in 28 U.S.C. § 1732, and such course was open to appellants.

About a week of the trial was devoted to the "net worth" proof of the prosecution, and this proof was not perfect, but no reversible error is found. There was an abundance of other and independent evidence of substandard grades to support the convictions.

■ The jury asked for and was furnished an adding machine after they retired to deliberate. Appellants cite this as error. This was, however, only a machine which accomplished the same result that the jury would have with pens and pencils which it can be safely assumed they had in their possession. This was not a device with which they could perform a test or experiment nor to create something in the nature of evidence. Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir.), Anno. 80 A.L.R. 108. We find no error as to this matter.

■ The appellants assert that defendant Landers was required to become a witness against himself because a subpoena was served on him and he was required to produce corporate records. Appellants assert this is so because the court assumed that all records had been so produced in ruling on the admissibility of the corporate records of meat purchases considered above. The record does not show that the court necessarily so assumed, and in any event there is no question of self-incrimination. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225.

■■ The indictments charged a violation of Title 18 U.S.C. § 287. Appellants argued below and assert here that the indictment did not state in what particular the claim was false or fraudulent. The claim presented stated that the order for subsistence was correct and just and that payment had not been received. Appellants thus contend that this certificate has nothing to do with how the order was filled. The appellants, as the trial judge stated, were charged with presenting an invoice claiming payment for a certain grade of meat when in fact meat of an in-

ferior grade had been delivered. The certificate referred to an order for subsistence bearing a certain number and when reference is made to these orders there is a clear description of grade. This result is entirely consistent with Marteney v. United States, 216 F.2d 760 (10th Cir.). Each indictment must be considered as a whole. There was no duplicity by the reference to the certification on the invoice. The indictments were for false claims, not for a violation of 18 U.S.C. § 1001.

There was no error in the denial of appellant's motion to dismiss on the ground that there was a failure to prove the invoices false in any particular. Appellants assert again that the invoice does not represent the meat to be of any particular quality. As indicated above there is sufficient reference to the contract documents to show clearly that the indictment was for a false claim for payment for what had not been delivered. Dimmick v. United States, 116 F. 825 (9th Cir.).

■ Appellant Bethley moved for judgment of acquittal on the ground that there was no proof of his knowledge that a false claim was presented. This defendant was in charge of the boning room and did not handle office matters. He had previously worked for defendant Landers, was employed by him for this position, and had been Imperial's plant superintendent since 1957. The testimony of some fifteen employees in the boning room of defendant's plant was, in effect, that Bethley would signal them orally or with hand signals when the grade stamp, other than "choice," was to be cut off the meat they were then processing. These witnesses who worked under Bethley's direction testified that ungraded meat was processed for the orders in question and that a cut with a "choice" grade mark was to be kept on the tables as a "decoy" for the Government plant inspectors. There was sufficient proof of knowledge on Bethley's part to support the trial court's denial of the motion. McCoy v. United States, 169 F.2d 776 (9th Cir.); Moses v. United States, 297 F.2d 621 (8th Cir.); Mc-

Clanahan v. United States, 230 F.2d 919 (5th Cir.). Also the trial court clearly and correctly charged the jury as to this defendant's position.

■ Appellants raise a question of venue. The indictments charged that each offense was committed in Colorado. The invoices or claims were prepared in Colorado and mailed to Missouri for payment. The claims were later sent to files in Chicago. Appellants moved for dismissal for improper venue, urging Travis v. United States, 364 U.S. 631, 81 S. Ct. 358, 5 L.Ed.2d 340. This motion and a motion for dismissal for variance were denied. The Government urges 18 U.S.C. § 3237(a) to establish venue in Colorado. This statute relates to offenses commenced in one district and completed in another, or committed in more than one district. The reliance by appellants on the Travis case is not justified. In United States v. Gross, (2d Cir.) 276 F.2d 816 (286 F.2d 59), which is an income tax case, the court calls attention to and relies on the phrase in 18 U.S.C. § 3237, " * * * or committed in more than one district." Henslee v. United States, 262 F.2d 750 (5th Cir.), reaches a similar result. The trial court's denial of the motions was correct.

■ Appellants complain of the instructions given as to what would be required to find the corporate defendant guilty. The court charged that in order to find the corporation guilty, it was necessary to find either defendant Landers or defendant Bethley guilty, or both of them guilty; and the criminal acts of the individuals were committed while they were acting as officers, agents, or employees, within the scope of their employment. These were the only two persons concerned whose intent could make the corporation liable according to the record. This proof showed the individuals to have the intent and knowledge required and that the acts were within the scope of their employment. The acts were committed while they were corporate officers or employees. These instructions were applicable under the proof, and were not in error.

Defendant Landers owned fifty per cent of the stock of Imperial Meat Company, he was president of the company, and in full time active charge. He handled meat purchases, the bidding on Government contracts, and had long experience in the meat business. The company had furnished some forty-five million pounds of boneless beef to the Government from 1957 to 1960. The proof of knowledge on Landers' part meets the required standard. Dennis v. United States, 302 F.2d 5 (10th Cir.); Towbin v. United States, 93 F.2d 861 (10th Cir.). Inferences of fact have not been added one to another; instead the treatment of circumstantial evidence in Sadler v. United States, 303 F.2d 664 (10th Cir.), and in Gallegos v. United States, 237 F.2d 694 (10th Cir.), is a sufficient answer to this contention. The trial court was correct in its denial of defendant Landers' motions for acquittal, and in refusing a severance. Dennis v. United States, supra.

Appellants raise several other points on this appeal, but they require no separate discussion.

Affirmed.